**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

ANGE GILOT,

       CASE NO.:

    *Plaintiff,*

v.

TRANS UNION, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.,
And EQUIFAX INFORMATION SERVICES
LLC,

    *Defendants.*

_____/

### PLAINTIFF'S COMPLAINT
### JURY DEMAND

1.   Plaintiff, Ange Gilot (hereinafter "Plaintiff" or "Mrs. Gilot") brings this action against Defendants Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. (hereinafter "FCRA").

### JURISDICTION AND VENUE

2.   This Court has jurisdiction under 28 U.S.C. § 1331 and/or 15 U.S.C. § 1581(p) because this action arises under the laws of the United States.

3.   Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

4.   Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Miami-Dade County, Florida.

### PARTIES

5.   Plaintiff is a natural person who, at all times relevant to this action is and was a resident of

Miami-Dade County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. §1692a(3).

6. Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

7. Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

8. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

9. Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

10. Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

11. Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

12. Furnishers use instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to the consumer reporting agencies, Trans Union, Equifax, Experian and Innovis, (collectively "credit reporting agencies").

13. These instrumentalities of interstate commerce are largely electronic, written, or telephonic

communications which have effects on consumers and their credit reports within the State of Florida.

**STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT**

14. The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

15. Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

16. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

17. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

18. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3),(4).

19. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction

Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

20. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

21. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

22. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. §§ 1681c-2(c)(2).

23. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

24. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

25. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

26. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

27. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

28. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

29. The FCRA requirements are important, because they help credit reporting agencies ensure

that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

30. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

31. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

32. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

33. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1691n.

34. The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

35. The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

36. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

37. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

38. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

39. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

40. Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title."

U.S.C. § 1681a(d)(1).

41. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

42. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

43. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

44. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

45. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

46. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

47. If a furnisher's investigation of a consumer's dispute determines that the information in

dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

48. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

49. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

50. Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed December 9, 2025).

## FACTUAL ALLEGATIONS

### I.   BACKGROUND INFORMATION

51. The Plaintiff is a documented victim of identity theft, having filed a Federal Trade Commission ("FTC") Identity Theft Report dated March 20, 2025, documenting the fraudulent activity and unauthorized accounts associated with her name. Plaintiff's personal identifying information was used without her authorization to create accounts, generate credit inquiries and associate unfamiliar personal information with her credit file. After discovering the identity theft, Plaintiff submitted multiple disputes to consumer reporting agencies including TransUnion, Experian, Equifax, Innovis, and NCTUE enclosing identification and her Identity Theft Affidavit and requesting correction or removal of the fraudulent information. By doing so, the Plaintiff took

all reasonable and necessary steps to notify law enforcement authorities and relevant agencies of the fraudulent activities carried out in her name.

52. Despite receiving Plaintiff's identity theft documentation, including Plaintiff's driver's license and FTC Identity Theft Report, Defendants repeatedly verified disputed information, continued reporting unauthorized tradelines and inquiries, and failed to properly correct or block inaccurate information appearing on Plaintiff's consumer reports. As a result of Defendants' conduct, inaccurate and identity-theft-related information remained on Plaintiff's credit reports for months after her disputes, causing harm to Plaintiff's credit profile and forcing her to repeatedly dispute fraudulent information.

## II.    DISPUTES WITH TRANS UNION

53. As Plaintiff had been victimized by identity theft, Plaintiff had advised Trans Union previously concerning same and had a "Fraud Alert" on her credit report from October 30, 2024 through October 30, 2025 to prevent unauthorized access to her credit report. Trans Union also requested Equifax and Experian add a "Fraud Alert" be added to their credit reports. Plaintiff also placed a credit freeze with Trans Union on October 30, 2024 to prevent a fraudster from obtaining her credit report to open a new account.

54. The Plaintiff mailed a dispute letter to Trans Union, which was duly received by Trans Union on April 17, 2025 ("First Dispute Letter to Trans Union"), disputing the hard inquiry reported by Capital One with a date of inquiry of October 22, 2024.

55. In Trans Union's subsequent credit reports dated July 20, 2025, September 23, 2025, and December 19, 2025, Trans Union verified the disputed hard inquiry.

56. In the First Dispute Letter to Trans Union, the Plaintiff disputed a tradeline reported by

Ally Financial, Partial Account No. 22813270, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Trans Union failed to block or remove the disputed account information. Trans Union issued an investigation result dated May 14, 2025 which verified the derogatory reporting. Upon reviewing her subsequent credit reports dated July 20, 2025, September 23, 2025 and December 19, 2025, the Plaintiff found that the disputed tradeline information had been deleted.

57. In the First Dispute Letter to Trans Union, the Plaintiff disputed a tradeline reported by Goldman Sachs Bank USA, Partial Account No. 11000111888, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Trans Union failed to block or remove the disputed account information. Trans Union issued an investigation result dated May 14, 2025 which verified the derogatory reporting. Upon reviewing her subsequent credit reports dated July 20, 2025 and  September 23, 2025, Plaintiff found Trans Union verified the disputed account information. Eventually, on her subsequent December 19, 2025 credit report, the Plaintiff found that the disputed tradeline information had been deleted.

58. In the First Dispute Letter to Trans Union, the Plaintiff disputed a tradeline reported by JP Morgan Chase Bank, Partial Account No. 426684174162, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Trans Union failed to block or remove the disputed account information. Trans Union issued an investigation result dated May 14, 2025 which verified the derogatory reporting. Upon reviewing her subsequent credit reports dated July 20, 2025, September 23, 2025, and December 19, 2025, Plaintiff found Trans Union verified the disputed account information.

59. Additionally, in her First Dispute Letter to Trans Union, the Plaintiff made a request

pursuant to her rights under the FCRA that a Consumer Statement be added to her Trans Union credit file.

60. No consumer statement of this kind was ever added to her subsequent consumer reports despite the consumer requesting the same.

61. The Plaintiff mailed a second dispute letter to Trans Union, which was duly received by Trans Union on November 3, 2025 ("Second Dispute Letter to Trans Union"), disputing several fraudulent soft inquiries and advising if they could not all be removed that Trans Union add a Consumer Statement to her Trans Union credit file.

62. Despite failing to remove all the disputed soft inquiries in the subsequent December 19, 2025 credit report, no consumer statement of this kind was added to her subsequent December 19, 2025 credit report despite the consumer requesting the same.

### III.    DISPUTES WITH EXPERIAN

63. As Plaintiff had been victimized by identity theft, Plaintiff caused Experian to place a "Fraud Alert" on her credit report from October 31, 2024 through October 31, 2025 to prevent unauthorized access to her credit report. On or around October 31, 2024, Plaintiff also placed a credit freeze with Experian to prevent a fraudster from obtaining her credit report to open a new account.

64. The Plaintiff mailed a dispute letter to Experian, which was duly received by Experian on April 18, 2025 ("First Dispute Letter to Experian"), disputing a tradeline reported by Ally Financial, Partial Account No. 228132, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Experian failed to block or remove the disputed account information. Upon reviewing her subsequent credit reports dated July

21, 2025, September 23, 2025 and December 19, 2025, the Plaintiff found that the disputed tradeline information had been verified.

65. In the First Dispute Letter to Experian, the Plaintiff disputed a tradeline reported by Goldman Sachs Bank USA, Partial Account No. 110001, specifically the Plaintiff disputed derogatory late payment information which was associated with an identity theft. Experian failed to block or remove the disputed account information. Upon reviewing her subsequent credit reports dated July 21, 2025 and September 23, 2025, Plaintiff found Experian verified the disputed account information. Eventually, on her subsequent December 19, 2025 credit report, the Plaintiff found that the disputed tradeline information had been deleted.

66. In the First Dispute Letter to Experian, the Plaintiff disputed a tradeline reported by JP Morgan Chase Bank, Partial Account No. 426684, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Experian failed to block or remove the disputed account information. Upon reviewing her subsequent credit reports dated July 21, 2025, September 23, 2025, and December 19, 2025, Plaintiff found Experian verified the disputed account information.

67. Additionally, in her First Dispute Letter to Experian, the Plaintiff made a request pursuant to her rights under the FCRA that a Consumer Statement be added to her Trans Union credit file.

68. No consumer statement of this kind was ever added to her subsequent consumer reports despite the consumer requesting the same.

69. The Plaintiff mailed a second dispute letter to Experian, which was duly received by

Experian on November 3, 2025 ("Second Dispute Letter to Experian"), again disputing several tradelines and their derogatory late payment information and further requesting that Experian add a Consumer Statement to her Experian credit file.

70. In the Second Dispute Letter to Experian, Plaintiff again disputed a tradeline reported by Ally Financial, Partial Account No. 228132, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Experian failed to block or remove the disputed account information. Upon reviewing her subsequent credit report dated December 19, 2025, the Plaintiff found that the disputed tradeline information had been verified.

71. In the Second Dispute Letter to Experian, the Plaintiff again disputed a tradeline reported by Goldman Sachs Bank USA, Partial Account No. 110001, specifically the Plaintiff disputed derogatory late payment information which was associated with an identity theft. Experian failed to block or remove the disputed account information. Upon reviewing her subsequent credit report dated December 19, 2025 credit report, the Plaintiff found that the disputed tradeline information had been deleted.

72. In the Second Dispute Letter to Experian, the Plaintiff again disputed a tradeline reported by JP Morgan Chase Bank, Partial Account No. 426684, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Experian failed to block or remove the disputed account information. Upon reviewing her subsequent credit report dated December 19, 2025, Plaintiff found Experian verified the disputed account information.

73. Additionally, in her Second Dispute Letter to Experian, the Plaintiff made a request pursuant to her rights under the FCRA that a Consumer Statement be added to her Trans Union credit file.

74. No consumer statement of this kind was ever added to her subsequent consumer reports

14

despite the consumer requesting the same.

### IV. DISPUTES WITH EQUIFAX

75. As Plaintiff had been victimized by identity theft, Plaintiff caused Equifax to place a "Fraud Alert" on her credit report from October 31, 2024 through October 31, 2025 to prevent unauthorized access to her credit report. On or around October 31, 2024, Plaintiff also placed a credit freeze with Equifax to prevent a fraudster from obtaining her credit report to open a new account.

76. The Plaintiff mailed a dispute letter to Equifax, which was duly received by Equifax on April 17, 2025 ("Dispute Letter to Equifax"), disputing a tradeline reported by Ally Financial, Partial Account No. 5875, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Equifax failed to block or remove the disputed account information. Upon reviewing her subsequent credit reports dated September 23, 2025 and December 19, 2025, Plaintiff found that the disputed tradeline information had been verified in the September 23, 2025 credit report while it was finally deleted in the December 19, 2025 credit report.

77. In the Dispute Letter to Equifax, the Plaintiff disputed a tradeline reported by Goldman Sachs Bank USA, Partial Account No. 0128, specifically the Plaintiff disputed derogatory late payment information which was associated with an identity theft. Equifax failed to block or remove the disputed account information. Upon reviewing her subsequent credit reports dated September 23, 2025 and December 19, 2025, Plaintiff found that the disputed tradeline information had been verified in the September 23, 2025 credit report while it was finally deleted in the December 19, 2025 credit report.

78. In the Dispute Letter to Experian, the Plaintiff disputed a tradeline reported by JP Morgan

Chase Bank, Partial Account No. 6905, specifically the Plaintiff disputed the derogatory late payment information which was associated with an identity theft. Experian failed to block or remove the disputed account information. Upon reviewing her subsequent credit reports dated September 23, 2025 and December 19, 2025, Plaintiff found Equifax verified the disputed account information.

79. Additionally, in her Dispute Letter to Equifax, the Plaintiff made a request pursuant to her rights under the FCRA that a Consumer Statement be added to her Trans Union credit file.

80. No consumer statement of this kind was ever added to her subsequent consumer reports despite the consumer requesting the same.

**Plaintiff's Damages**

81. Defendants' derogatory and inaccurate reporting of the above-described tradelines, account information and inquiries on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

82. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); See Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); See Santangelo v. Comcast Corp., 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); See Binns v. Ocwen Loan Servicing, LLC, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were

16

considered intangible harms"); See Rothman v. U.S. Bank Nat'l Ass'n, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); See Green v. RentGrow, Inc., No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); See Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, See Coulbertson v. Experian Info. Sols., Inc., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

83. As a result of Defendants' conduct, including but not limited to the continued publication of inaccurate information concerning tradelines, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining in his credit files, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See *Coulter v. Sagestream, LLC*, 501 F.Supp.3d 298 (2020); *Norman v. Trans Union, LLC*, 669 F.Supp.3d 351 (2023); *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (2023).

**Pattern of Noncompliance**

84. Defendants verified specific disputed tradeline information and later deleted the same

items in subsequent reports, demonstrating that the information was inaccurate at the time it was verified.

85. Defendants' repeated verification of information later determined to be inaccurate occurred after Plaintiff had provided identity theft documentation and dispute notices, supporting a finding of reckless disregard of statutory obligations.

## COUNT I - VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST TRANS UNION

86. Plaintiff incorporates by reference paragraphs 1, 3-7, 12-62, and 81-85 as if fully stated herein.

87. During the relevant time frame, Trans Union received Plaintiff's disputes which requested that information be removed from her credit file.

88. Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

89. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

90. Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II - VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST TRANS UNION

91. Plaintiff incorporates by reference paragraphs 1, 3-7, 12-62, and 81-85 as if fully stated

herein.

92. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

93. After receiving Plaintiff's disputes, Trans Union was placed on notice that it was reporting inaccurate information, yet Trans Union continues to include the inaccurate information in Plaintiff's credit file.

94. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

95. In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT III - VIOLATIONS OF 15 U.S.C. §1681i(c)
### AGAINST TRANS UNION

96. Plaintiff incorporates by reference paragraphs 1, 3-7, 12-63, and 81-85 as if fully set forth herein.

97. At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

98. At all times relevant hereto, Plaintiff is a "consumer" as provided for under the FCRA.

99. During the relevant time frame, Trans Union received Plaintiff's dispute requesting

Trans Union add her consumer statement explaining the accounts and related information on her credit report were inaccurate.

100.     Trans Union violated 15 U.S.C. § 1681i(c) by unreasonably failing to clearly note that the inaccurate accounts were disputed by Plaintiff and provide either the consumer's statement or a clear and accurate codification or summary thereof.

101.     Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

102.     Alternatively, Trans Union negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

103.     As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress, credit denials, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages and punitive damages; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IV - VIOLATIONS OF 15 U.S.C. §1681i
### AGAINST EXPERIAN

104.     Plaintiff incorporates by reference paragraphs 1, 3-5, 8-9, 12-52, 63-74, and 81-85 as if fully stated herein.

105.     During the relevant time frame, Experian received Plaintiff's disputes which requested that information be removed from her credit file.

106.     Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete

20

inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

107.     Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

108.     Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V - VIOLATIONS OF 15 U.S.C. §1681e(b)
## AGAINST EXPERIAN

109.     Plaintiff incorporates by reference paragraphs 1, 3-5, 8-9, 12-52, 63-74, and 81-85 as if fully stated herein.

110.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

111.     After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting inaccurate information, yet Experian continues to include the inaccurate information in Plaintiff's credit file.

112.     Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

113.     In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

21

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT VI - VIOLATIONS OF 15 U.S.C. §1681i(c)**
**AGAINST EXPERIAN**

114.     Plaintiff incorporates by reference paragraphs 1, 3-5, 8-9, 12-52, 63-74, and 81-85 as if fully set forth herein.

115.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

116.     At all times relevant hereto, Plaintiff is a "consumer" as provided for under the FCRA.

117.     During the relevant time frame, Experian received Plaintiff's dispute requesting Experian add her consumer statement explaining the accounts and related information on her credit report were inaccurate.

118.     Experian violated 15 U.S.C. § 1681i(c) by unreasonably failing to clearly note that the inaccurate accounts were disputed by Plaintiff and provide either the consumer's statement or a clear and accurate codification or summary thereof.

119.     Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

120.     Alternatively, Experian negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

121.     As a result of Experian's FCRA violations, Plaintiff suffered mental and

22

emotional distress, credit denials, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages and punitive damages; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EQUIFAX

122.     Plaintiff incorporates by reference paragraphs 1, 3-5, 10-52, and 75-85 as if fully stated herein.

123.     During the relevant time frame, Equifax received Plaintiff's disputes which requested that information be removed from her credit file.

124.     Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

125.     Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

126.     Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681e(b)
### AGAINST EQUIFAX

127.     Plaintiff incorporates by reference paragraphs 1, 3-5, 10-52, and 75-85 as if fully stated herein.

128.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

129.     After receiving Plaintiff's disputes, Equifax was placed on notice that it was reporting inaccurate information, yet Equifax continues to include the inaccurate information in Plaintiff's credit file.

130.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

131.     In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT IX - VIOLATIONS OF 15 U.S.C. §1681i(c)
### AGAINST EQUIFAX

132.     Plaintiff incorporates by reference paragraphs 1, 3-5, 10-55, and 75 -85 as if fully set forth herein.

133.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

24

134.     At all times relevant hereto, Plaintiff is a "consumer" as provided for under the FCRA.

135.     During the relevant time frame, Equifax received Plaintiff's dispute requesting Equifax add her consumer statement explaining the accounts and related information on her credit report were inaccurate.

136.     Equifax violated 15 U.S.C. § 1681i(c) by unreasonably failing to clearly note that the inaccurate accounts were disputed by Plaintiff and provide either the consumer's statement or a clear and accurate codification or summary thereof.

137.     Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

138.     Alternatively, Equifax negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

139.     As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress, credit denials, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages and punitive damages; attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 6/22/2026                              Respectfully submitted,

SHARMIN & SHARMIN, P.A.

/s/ Eyal S. Eisig
Eyal S. Eisig, Esq.
eyal@sharminlaw.com
FBN: 109438
830 North Federal Highway
Lake Worth Beach, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

Attorneys for Plaintiff